# AMERICAN GRAPHOPHONE CO. *v.* SMITH.

EQUITY PRACTICE; CROSS BILL; SERVICE OF PROCESS ON SOLICITOR.

1. A motion for an order of a court of equity directing the service of a subpœna upon a defendant company in a cross bill, by service upon its solicitors, is not open to the objection that there is no appearance to the cross bill, and hence there are no solicitors of the defendant, where the order of the court directs the defendant to be served by serving the subpœna upon its solicitors by name, and it appears that the solicitors are acting in that capacity for the defendant, not only in the equity cause, where the company is complainant, but in a suit at law between the same parties, where it is the sole defendant.

2. If a cross bill is properly framed, and is in any substantial part defensive, service of a subpœna on the solicitors of the original complainant, the sole defendant thereto, is sufficient to require an appearance and answer.

3. A cross bill is a proper mode of defense to a suit seeking to set aside a contract, when the defendant seeks to have the complainant's contention denied, and a decree for affirmative relief establishing the validity of the contract.

No. 1625.  Submitted January 5, 1906.  Decided January 17, 1906.

HEARING on a special appeal from an order of the Supreme Court of the District of Columbia denying a motion to vacate an order for the service of a subpœna.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

In this case a special appeal was allowed from an order of the supreme court of the District of Columbia, passed in equity cause No. 23,990, overruling a motion of the appellant to set aside and quash the service of a subpœna *ad respondendum,*

served upon its solicitor, requiring it to appear and answer the cross bill of the appellee.

It appears that said subpœna had been served by order of Mr. Justice Stafford, holding the equity court, on motion of the appellee, and due notice to the solicitors for the appellant.

This litigation began by the filing of a declaration on the law side of said supreme court, in May, 1903, by William Herbert Smith, a resident of this District, against the American Graphophone Company, a corporation chartered under the laws of West Virginia, and at that time having its principal office in this District, and having an agent here in charge of said office, upon whom the summons was served.

The declaration was based upon an alleged contract made by the said graphophone company with Frank L. Capps, V. H. Emerson, and William Herbert Smith, dated June 12, 1899, and also upon the common counts; and the plaintiff claimed the sum of $110,000, with interest from May 1, 1903.

The declaration states that the said Emerson and Capps assigned all their interests in the royalties accruing under the said contract to the plaintiff, William Herbert Smith; and that, by reason of certain operations of the said company in pursuance of the terms of said contract, a large amount in royalties had become due to the plaintiff on account of certain graphophone and phonograph records manufactured by the defendant.

A bill of particulars was attached, specifying the royalty claimed on these records and the number alleged to have been made by the said company.

The defendant appeared in the said suit by Philip Mauro and Fulton Lewis, its attorneys, and entered a plea of *non assumpsit,* on which issue was joined.

Thereafter, to wit, on May 29, 1903, the said company filed its bill in equity, in the same court, against William Herbert Smith, wherein it set out in full its version of the subject-matter of litigation, and prayed for an injunction to restrain the plaintiff from prosecuting said action at law. It also prayed that the said contract of June 12, 1899, be rescinded, and that

the defendant be ordered to pay to the complainant the sum of $12,000, with interest from December 31, 1900, together with costs; and for other or further relief.

To this bill a demurrer was interposed, which was overruled, after argument; but the complainant nevertheless asked leave, which was granted, to file an amended bill, and thereupon, on March 7, 1905, the said company filed its amended bill, wherein it restated its grievances, but prayed for the same relief as in the original bill.

To this bill, as amended, the said defendant, William Herbert Smith, filed his answer on April 21, 1905.

On March 14, 1905, the complainant, the graphophone company, filed a motion for a preliminary injunction, which does not appear to have been considered until after the filing of said answer; but on May 20, 1905, the motion was granted, after argument, the court reciting in the order granting the same that it was of the opinion "that all the matters in controversy between said parties should be settled in the said equity suit." Thereafter, on May 22, 1905, and by leave of the justice holding said equity court, the said defendant, William Herbert Smith, filed a cross bill, in which he restated his claim to royalties under the said contract and operations of the said company, and made a copy of the declaration and amended declaration in said suit at law, and the bill of particulars thereto attached, a part of said cross bill; and prayed in the cross bill that the said contract of June 12, 1899, "may be adjudged, decreed, and declared to be a good, valid, and subsisting obligation, binding upon all the parties thereto;" and for an injunction against the said company, enjoining it from bringing any action or suit assailing the validity of said contract, or from in anywise controverting or denying the validity of the same; and for an accounting between the complainant in the cross bill and the defendant; and for other relief.

When the cross bill was filed it appears that the graphophone company had removed its office from the District of Columbia, and no one was found here upon whom to serve process requiring an answer to the same; and thereupon application was

made to the equity court for an order authorizing service upon the counsel representing the said company, which order was granted, and the equity court directed that service be made upon said solicitors, Philip Mauro, Esq., and Fulton Lewis, Esq., or upon either of them, and that the company be required to appear and answer said cross bill within thirty days after such service.

This subpœna was served, as shown by the return of the marshal, upon Fulton Lewis, the attorney of said company, on June 23, 1905; and thereupon the said company, by said Lewis, entered a special appearance, and filed a motion to vacate the order authorizing such service; and that motion was heard by Mr. Justice Anderson early in July, 1905, and on July 19, 1905, said motion was denied.

From that order, on application of the said company, a special appeal was allowed to this court.

*Mr. Philip Mauro* and *Mr. Fulton Lewis* for the appellant.

*Mr. A. S. Worthington* and *Mr. Melville Church* for the appellee.

Mr. Justice BARNARD, of the Supreme Court of the District, who sat with the Court in the place of Mr. Justice McCOMAS, delivered the opinion of the Court:

The single question presented by the record is this: Was the service upon the solicitor sufficient to require the defendant in the cross bill to appear and answer the same?

It seems to be conceded that it is allowable for the equity court to direct that a subpœna to answer a cross bill be served upon the solicitors of record for the original complaint in cases where the cross bill is defensive in its nature; but it is claimed by the appellant that such practice must be limited to cases where the cross bills are wholly of that character; and, if offensive or affirmative in character, that service must be made upon the defendant thereto in person.

The appellant claims that the motion to allow service to be made on the solicitors is erroneous in this, that it asks for service to be made "upon solicitors for said defendant in this case," when there is no appearance of the defendant to the cross bill, and as such defendant it had no solicitors.

We think it is a sufficient answer to this objection to say that the order of the equity court expressly directed the said graphophone company to be served by serving the subpœna upon its solicitors, by name, or either of them; and the record shows that they were the solicitors for the said company, not only in the said equity cause, where the said company was the complainant, but in the said suit at law, where it was the sole defendant.

The claim that the cross bill is not defensive, but contains new matter which ought to be brought in by an independent bill, and for that reason that the service should be set aside as unwarranted, requires us to consider the character of the controversy and see whether the cross bill is such as is in any respect allowable under the rules of equity pleading and practice.

If it is a good cross bill, properly framed, and in any substantial part defensive, then we think the service on the solicitor of the original complaint, the sole defendant thereto, would be sufficient to require an appearance and answer.

The declaration in the suit at law is for a money judgment, based on the alleged written contract of June 12, 1899. The original bill in equity recites the same contract, and charges that, by reason of alleged false representations and the position held by him as director of said company at the time, the said action of the defendant in bringing said suit is unconscionable and contrary to equity; and that the questions in dispute can only be properly reviewed, and the rights of the parties adjudged, in a court of equity.

The amended bill contains many other averments of alleged equitable defenses to the suit at law, and repeats, in substance, the above charges, and prays for a decree enjoining the said action at law, and rescinding the said contract, and requiring

the defendant to pay to it the sum of $12,000, which the company avers it paid out on account of the alleged dealings, and by reason of the misrepresentations of the defendant.

The complainant in the cross bill refers to the said contract of June 12, 1899, and the alleged dealings under and by virtue thereof, and restates the claims made in the declaration in the suit at law, and prays for an accounting, for a decree establishing said contract as valid, and enjoining the company from assailing it, or, if the said contract is void or voidable for any reason, that the company may be required to pay what may be ascertained to be due him in the premises.

If the complainant in the cross bill shall maintain the claims made therein by proof, it seems to us that they must operate to defeat the claims made in the bill, and that therefore they are defensive in character; that they may prevent the complainant obtaining the $12,000 claimed by it, in any view the court shall take as to the voidability of the said contract; but if the court shall decide to establish the validity of the said contract it must necessarily follow that the complainant's prayer for its rescission will have to be denied.

A cross bill is a proper mode of defense to a suit seeking to set aside a contract, when the defendant seeks to have the complainant's contentions denied, and a decree for affirmative relief establishing the validity of the contract. 2 Dan. Ch. Pl. & Pr. 4th ed. p. 1550; *Carnochan* v. *Christie,* 11 Wheat. 446, 6 L. ed. 516; *Chicago, M. & St. P. R. Co.* v. *Third Nat. Bank,* 134 U. S. 276, 33 L. ed. 900, 10 Sup. Ct. Rep. 550. In the latter case (p. 288, L. ed. p. 904, Sup. Ct. Rep. p. 553) Mr. Justice Brewer, in delivering the opinion of the court, uses this language: "Where, in a court of equity, an apparent legal burden on property is challenged, the court has jurisdiction of a cross bill to enforce by its own procedure such burden. The court which denies legal remedies may enforce equitable remedies for the same debt; and an application for the latter is not foreign to a bill for the former."

Being of the opinion that the cross bill is a proper one,—so far, at least, as relates to the question before us,—and without

considering any further points presented in argument, we are constrained to hold that there is no error in this record as to the said service of process, and that the order appealed from should be *affirmed, with costs; and it is so ordered.*