BEST, assignee of PLATNER, vs. STRONG.

THIS was an action of assumpsit, tried at the Columbia circuit in April, 1827, before the Hon. WILLIAM A. DUER, one of the circuit judges.

The plaintiff, describing himself as "assignee of the estate and effects of Henry Platner, an insolvent debtor, according to the force, form and effect of the several statutes concerning insolvent debtors," declared in *indebitatus assumpsit*, that the defendant was indebted to Platner *before he became insolvent*, in the sum of $3000, for money had and received, &c. and being so indebted, &c. promised to pay &c. The defendant pleaded the general issue. The plaintiff claimed to recover on the following state of facts : In the year 1820, a bill in chancery was filed by Platner against Samuel Sherwood, Walter Wood and Levi Baxter, to set aside certain sales of lands which had been had in the counties of Delaware, Cayuga, Seneca, Onondaga and Cortland, under executions on a judgment against Platner, who claimed to be the owner of between 80 and 90 military lots. On the 15th January, 1821, an agreement was entered into under seal between Platner and his sons-in-law Anthony Maxwell and Philip Kilts of the one part, and the defendant of the other part, whereby the defendant agreed to aid and assist Platner and his sons-in-law in the prosecution of the suit in chancery, and to *advance* the necessary counsel fees and other expenses in carrying it on, the instrument reciting that

In an action by the assignee of an insolvent debtor, in which the plaintiff declares *as assignee* for a cause of action existing prior to the assignment, the plaintiff must prove, on the trial, the character in which he sues, altho' no other plea than the general issue is interposed.

An action for money had and received, will not lie by one party against another to recover money received under a contract made in violation of the statute to prevent and punish champerty and maintenance.

on account of the advanced age of Platner, and the inability of all the parties of the first part to make the necessary advances, they were unable to prosecute the suit in chancery to effect; and he further agreed to commence prosecutions for all and every lot and tract of land claimed by the parties of the first part; the defendant to pay one fourth of the costs, counsel fees and expenses in the suit in chancery, and in such other suits as might subsequently be brought, and the other parties to the agreement the remaining three fourths. As a compensation for his services, the defendant was to receive *twenty-five per cent.* on all monies and property recovered, until the whole sum recovered should amount to $100,000, and for any excess, he was to receive twelve and an half per cent. In the agreement was contained also a power of attorney from Platner and his sons-in-law to the defendant, to take possession of the lands claimed by them, and to which they had title previous to a certain day, excepting a certain tract, and to enter into contracts and sell the land, Platner and his sons-in-law binding themselves to ratify and confirm the acts of the defendant under a penalty of $25,000, which were declared liquidated damages. In pursuance of this agreement, the defendant assumed the management of the business, and the solicitor and counsel who had charge of the chancery suit, afterwards consulted only with him, and had no further communication with Platner. On the trial, a book was exhibited containing the lots claimed, the situation of the title and possession which the defendant was to inquire into, and to which his agency was directed. The defendant made several journeys to the west on the business in which he had engaged, and incurred heavy expenses in the prosecution of the chancery suit. The plaintiff produced a letter from the defendant, in which was contained this paragraph: "I never despair, but I am afraid that I shall sink under the load with which I am saddled before I can discharge it," referring to the contract he had entered into. On the 22d January, 1825, a compromise was effected of the chancery suit, which the counsel for Platner testified he considered very advantageous for the complainant. The defendant was consulted, and assisted in bringing it about; and

but for his aid, it would not have taken place. The terms of the compromise were, that about *forty-three* of the lots mentioned in the bill of complaint were disclaimed by the defendants, and about the same number were disclaimed by Platner; the defendants were to pay $3000 in cash; convey a lot of land of the value of $1200 to a son of Platner, and secure to Platner an annuity for life of $200 per annum, which was valued at between $900 and $1000; the defendants were never to be disturbed by Platner, or by any one under him or his heirs, or acting by their procurement; an amicable decree was to be entered to carry the agreement into effect as far as practicable; each party to pay his own costs, and a bond to be given by Platner, with the defendant as his surety, in the penal sum of ten thousand dollars, as liquidated damages that Platner and his heirs should abide by the agreement. This bond was a *sine qua non* to the settlement. The defendant refused to join in it as the surety of Platner, unless the $3000 were paid to him, in which case he agreed to account fairly with Platner, and pay him what should be found due to him. The solicitor and counsel of Platner advised him to accede to the defendant's offer, and if he did not settle fairly, sue him. The $3000 were paid to the solicitor of Platner, who, after deducting the taxable costs and counsel fees due to several counsel who had been employed in the cause, paid the balance, viz. $1500, to the defendant, as the agent and attorney of Platner, under the agreement between the parties, and took his receipt for the same. This sum, together with a small sum of about $75, alleged to have been paid by mistake by the solicitor of Platner to the defendant, was claimed to be recovered, the facts relative to which smaller sum it is deemed unnecessary to state, it being involved in, and controuled by the principles applied to the greater sum.

In the progress of the trial, it was objected by the defendant that the evidence was inadmissible, because, 1. The action, if any, should have been covenant; 2. That it should have been brought in the name of all the parties to the contract, viz. Maxwell and Kilts, as well as Platner; and 3. That the contract under which the money had been obtained, was

in violation of the statute to prevent and punish champerty and maintenance. These several objections were overruled. The evidence on the part of the plaintiff being closed, and a set off of about $200 proved, the counsel for the defendant moved that the plaintiff be nonsuited, on the ground that the insolvency of Platner had not been shewn, no proceedings under any insolvent act affecting him had been produced, and no assignment of his estate to the plaintiff proved; which motion was overruled, and the cause submitted to the jury, who found a verdict for the plaintiff for $1294.

*E. Williams*, for defendant, now moved to set aside the verdict and for a new trial. He said that it had been insisted at the circuit that the action, if any, should have been covenant, and that the plaintiff could not recover for the nonjoinder of others as plaintiffs. He, however, now thought that no action at law would lie; that the remedy, if any, against the defendant, was by bill in equity, in which only the rights of the several parties could be adjusted. Platner had received an annuity of $1000, his son a farm worth $1200; and though the defendant had received $1500, he had paid back $200 of it; his expenditures probably were $300 more, and his share of the spoil ought at least to be equal to $1000. The plaintiff, however, was not entitled to retain his verdict, as the contract out of which his claim grew was void, and the principle of *potior est conditio defendantis* applied. Independent of that objection, the plaintiff wholly failed in shewing a right to recover, by omitting to prove the insolvency of Platner, and the assignment of his estate to himself.

*K. Miller*, for plaintiff. The liability of the defendant arose from his promise to pay when he received the $1500. The plaintiff is, therefore, not obliged to resort to the original agreement to shew his right to recover. At all events, the plaintiff is entitled to retain his verdict for the lesser sum claimed, as the proof fully supports that charge.

The action was properly brought in assumpsit, being to recover monies had and received by the defendant. The plaintiff alone could sustain the action. The suit, on the settle-

ment of which the money was paid, was in his name, and with NEW-YORK,
him the settlement was made. May, 1829.

The plaintiff was not bound to prove himself assignee of
the estate of Platner. He had declared in that character,
and the defendant, by his plea of the general issue, had ad-
mitted the character in which he sued : the plea put in issue
the indebtedness, and nothing else. (7 *Johns. R.* 373. 14
*Mass. R.* 295.) The suit is in *auter droit,* and the plaintiff
was no more bound to prove the character in which he sued,
than if the action had been by him as executor, and the plea
the general issue. Besides, to avail himself of this objection,
the defendant should have plead in abatement.

Best
v.
Strong.

*Williams,* in reply. If the plaintiff was in fact the as-
signee of Platner, the action was properly brought in his
name, (1 *Chitty,* 15,) and a plea in abatement could not
have been interposed.

*By the Court,* MARCY, J. The first question presented by
this case is, whether the character in which the plaintiff su-
ed as assignee of Platner was admitted by the pleadings. It
is contended by the plaintiff, that the defendant, by pleading
in chief, has admitted upon the record his right to maintain
the action as assignee ; and if this right was intended to be
contested it should have been put in issue by a plea in abate-
ment. The case of *Schermerhorn* v. *Jenkins,* (7 *Johns. R.*
373,) was adduced as an authority to support this position.
It is a well settled principle of law, that the infancy of the
plaintiff should be presented by a plea in abatement, and the
defendant cannot object to his appearance at the trial. The
objection in this case involves more than the mere right of
the plaintiff to appear and prosecute the action. No prece-
dent has been found in the books of such a plea as it is con-
tended the defendant should have put in, if he questioned the
right of the plaintiff to maintain the suit as assignee. This
precise question does not appear to have been presented to
our courts, and I have looked into the decisions of the
English courts for an authority in this case. I am incli-
ned to think that they have regarded the averment in
the declaration, that the plaintiff is an assignee of the insol-

NEW-YORK, vent or bankrupt, a substantial one, that must be proved to
May, 1829. entitle him to recover.

Best
v.
Strong.

In order to prove property, where the action is brought by
an assignee of a bankrupt, it is necessary to shew, 1. That
the bankrupt was a trader within the statute ; 2. The act of
bankruptcy ; 3. That the commission was regularly grant-
ed ; 4. *The assignment to the plaintiff ;* 5. Property in the
bankrupt. (*Bull. N. P.* 37.) Similar positions are reiter-
ated in *Starkie's Ev. part* 4, *p.* 140, 1. It is there said, that
" assignees of a bankrupt, who claim in the character of as-
signees, and not in their own right, must prove all the steps
which are essential to constitute the party a bankrupt and
themselves his assignees." To establish their title to the
bankrupt's property they must prove, 1. The commission ;
2. The trading ; 3. The act of bankruptcy ; 4. Petitioning
creditor's debt ; 5. *The assignment.* (*Starkie's Ev. part* 4,
*p.* 141, 144, 159, 166.) I have examined most of the cases
referred to, and they appear to warrant the positions in this
elementary treatise.

In the case of *Bay and others, assignees,* v. *Davis and oth-
ers,* (2 *Moore,* 3, 8 *Taunt.* 134, *S. C.*) the plaintiffs declar-
ed as assignees of certain persons named as bankrupts, and
on the trial, proved their title as assignees under three
separate commissions, instead of one joint commission. An
objection was taken to the variance between the declaration
and the evidence, and sustained by the king's bench. Dal-
las, J. observes : " The question is not whether there be a
common fund in which the plaintiffs have a common inter-
est, but whether they have a common title. On the declar-
ation, they appear to have a joint title, but the evidence shews
the fact to be otherwise." Burrough, J. remarks : " The
declaration and the facts appearing in evidence are at vari-
ance. It is necessary that every substantial averment in the
declaration should be proved true, and, in this instance, the
averment is not true."

The substantial averment which Mr. Justice Burrough
says should have been proved, but was not, I understand to
be the plaintiffs' *description* of themselves as the assignees of
the defendants, whereas the evidence which they adduced

on the trial shewed that they were assignees by three dif-
ferent commissions, and not by one joint commission, as the
declaration imported.

In the case of *Evans* v. *Mann*, (*Cowp.* 569,) the court
say that the plaintiff need not name himself assignee of the
bankrupt when he sues for goods sold by the bankrupt *after
the commission* of bankruptcy has issued.   In giving the opin-
ion in this case, Lord Mansfield says, that "it was not ne-
cessary that the plaintiffs should state themselves in the dec-
laration to be assignees, *though, in respect of the evidence in
support of the action, it might be incumbent on them to prove
the trading, bankruptcy,* &c. ; in short, the whole of their
case."

The case of *Stonehouse and another, assignees of De Cap-
iet* v. *De Silvia*, (3 *Campb.* 399,) is also an authority to shew
that the plaintiff must on the trial prove himself to have the
character in which he sues.   The plaintiffs described them-
selves to be the assignees of De Capiet, and declared upon a
contract made with him before his bankruptcy by the de-
fendant.   The proof shewed a joint commission put in
against De Capiet and one Perira de Souza Coldas.   The
defendant's counsel objected that the plaintiffs had not prop-
erly described themselves in the declaration.   Lord Ellen-
borough decided that the evidence supported the description
the plaintiffs had given of themselves.   These cases clearly
shew that the description the plaintiff gives of himself as as-
signee of a bankrupt, is regarded as a substantial averment in
the declaration, and must be proved to entitle him to re-
cover.

The plaintiff in this case, in order to establish his right to
recover, should have shewed himself to be what he stated in
his declaration he was, the assignee of Henry Platner.   Not
having done so, the defendant's motion at the trial for a non-
suit should have been granted.

A bare perusal of the agreement between Platner, Kilts
and Maxwell, of the one part, and the defendant of the oth-
er, cannot fail to shew it to have been made in violation of
the statute to prevent and punish champerty and mainte-
nance. (20 *Johns. R.* 386.)   If the $1500 was received by

the defendant in pursuance of this illegal contract, Platner could not, and if he could not, his assignee cannot, maintain an action for the recovery of it. (*Day*, 696. *Starkie's Ev. 4th pt.* 119.) That the contract was illegal and void, and that neither party to it could sustain a suit upon it, or enforce rights derived from it, will hardly admit of a question ; but there may be some doubt whether the $1500 was received under this agreement. I am, however, inclined think it was. The chancery suit, on the compromise of which the money was received, was pending when the agreement was entered into by the parties, and it was the subject of stipulations between them. The defendant was to furnish the means for its prosecution, defray a fourth part of its expense, and participate in the benefits of its result, if it should be successful. He mainly contributed to the favorable compromise which was effected. Although Platner objected to the *payment of the money to the defendant, yet,* as the negociation could not be concluded without the defendant's assent and co-operation, which he refused without receiving such payment, it must be inferred from the testimony that Platner agreed to this disposition of it, on receiving the promise of the defendant to settle with him fairly, and pay the balance, if any should be due. The defendant claimed the money as Platner's attorney and agent under the agreement, and his promise to settle and pay over the balance must be deemed, I think, to be a settlement under the illegal contract, and according to its terms. If this view of the transaction be correct, the plaintiff ought not to have recovered any thing on account of the $1500.

New trial granted.